OPINION OF THE COURT David F. Everett, J. Third-party defendants Claude Staley and 9 Cloverdale Lane Corp. move for an order, pursuant to CPLR 3212, granting summary judgment and dismissing the third-party complaint as against them. The motion is granted. The following facts are taken from the pleadings, motion papers, affidavits, documentary evidence and the record, and are undisputed unless otherwise indicated. Plaintiffs Albert J. Cutler (Cutler) and Emma F. Cutler commenced the instant action by filing a summons and complaint in the Office of the Westchester County Clerk on June 19, 2013, to recover damages for physical injuries Cutler allegedly sustained on November 1, 2011. In that complaint, it is alleged that Cutler was caused to fall due to the negligence of defendants Stella J. Thomas (Thomas) and Michael P. Thomas, now deceased,* while he was lawfully present on the Thomases’ jointly owned residential premises located at 227 Milton Road, Rye, New York (premises). Cutler’s wife, plaintiff Emma F. Cutler, asserts a derivative claim for loss of services and consortium. Issue was joined by service of defendants’ answer with affirmative defenses on or about July 12, 2013. Following a period of discovery, defendants commenced a third-party action against Staley and Cloverdale. Defendants also named Central Restoration & Development Corp. as a defendant on the basis that it is the alleged trade name or fictitious business name for Staley. For the purpose of the instant motion, it is undisputed that, while traversing a plywood ramp located by a stone wall in the backyard of the premises, Cutler was caused to slip off the ramp and sustain a fracture to his right ankle. In their complaint, plaintiffs allege that defendants were negligent in their maintenance of the ramp, and that they had both actual and constructive notice of the unsafe, dangerous and defective condition of the ramp. In their bill of particulars, plaintiffs amplify their allegations of negligence, including allegations relating to the ramp’s construction and repairs. At his deposition, Cutler testified that on the date of his accident he was employed by Meenan Oil and instructed to go to the premises and to remove the existing boiler and replace it with a new boiler (Cutler tr at 28). He, along with a coworker, arrived at the premises at around 9:00 a.m., on October 30th. There he used the ramp that was already in place along the passageway to the basement, some 10 to 15 times as he walked in and out of the area of the basement where the boiler was located. Passing back and forth on the ramp, and using a dolly when necessary to help transport the boilers, he removed the old boiler and brought in the new boiler. He confirmed that he did not slip, or make any complaints about the condition of the ramp that first day. Cutler and his coworker returned on the morning of November 1st. About a half hour after he arrived at the premises, while carrying a 30 to 40 pound expansion tank on the way into the basement with the help of his coworker, his accident occurred. Cutler explained that, as they walked toward the basement, he was holding one end of the expansion tank and walking forward, and his coworker was in front, holding the other end of expansion tank behind his back. It was while he was walking forward at the top of the ramp that his “foot slid across the plywood, got trapped between the wall and the plywood, and [he] fell over to the left,” injuring his right foot (id. at 52). When asked to describe the condition of the ramp at the time of his accident, Cutler stated that it was “damp, slimy, mildewy” (id. at 54). The gravamen of plaintiffs’ allegations is that Thomas and her husband were negligent in failing to adequately and properly build and erect the ramp, and in failing to properly maintain the ramp. Defendants thereafter commenced the third-party action seeking to hold Staley and Cloverdale, as the party or parties who allegedly constructed the replacement ramp, responsible for Cutler’s injuries. The third-party complaint contains 12 causes of action, charging each third-party defendant with four causes of action for: breach of contract for failing to procure insurance; common-law and/or contractual indemnification; common-law contribution; and negligence. Thomas was deposed as a defendant in the main action, and a second time as a third-party plaintiff in the third-party action. At the first deposition, Thomas testified that Staley installed the original ramp about 25 years ago pursuant to an arrangement between him and her husband for the purpose of transporting the lawnmower, the snow blower, and bicycles into and out of the basement (Thomas tr at 51, 52, 54, 63). Thomas denied having any involvement in either the decision or the installation of the original ramp and she did not know if it had been done pursuant to a written agreement (id. at 52). Thomas also testified that, when, in or around 2009, she and her daughter noticed that the original ramp was in poor condition, she called Staley to repair or replace the ramp due to decay (id. at 55). Thomas stated that she made oral arrangements with Staley to do the work, that she did not have a contract with him, nor did she supervise the work or pay him for the work. She also did not know if he obtained a permit to do the work (id. at 55-57, 61, 200, 289). Thomas did, however, acknowledge that she was responsible for the maintenance and upkeep of the original and replacement ramps, and that since her husband passed away, the job of handling the upkeep of the house, including the ramps, fell to her (id. at 62, 63). At her second deposition, Thomas testified that, besides Sta-ley, who was friends with her husband and who used to join him for lunch on a daily basis, she used various other contractors to do projects in and about the house, such as window replacement, siding repair and painting work (id. at 192, 194). One particular contractor, “Donny,” did work on the house both before and after her husband passed away (id. at 197). When asked why she called Staley, whom she had not seen very often since her husband passed away, to repair the ramp instead of “Donny,” Thomas stated: “Mr. Staley put the original ramp in, and he was a good friend who asked whenever we need anything call him” (id. at 198, 207, 215). Staley, who was deposed as part of the third-party action, acknowledged constructing and installing the original ramp, but denied any involvement with the replacement ramp. Accordingly, he seeks a summary judgment dismissal of the third-party complaint. In support of his motion, Staley submits, among other things, copies of: the pleadings; Thomas’s expert disclosure; third-party defendants’ expert disclosure; and party deposition transcripts; and, in addition to denying any involvement with the replacement ramp on which Cutler allegedly slipped and fell, he argues that each of the 12 causes of action lacks merit. As argued by Staley, Thomas’s causes of action for breach of contract for failing to procure insurance and for contractual indemnification are meritless because there is no evidence that the parties entered into a contract with respect to either the original, or the replacement ramp. Thus, there can be no failure to perform under the terms of the contract. Staley also contends that there is no basis for Thomas to recover from him based on common-law indemnification, or contribution. Given the lack of evidence that Staley constructed the replacement ramp, or even if he did, that Thomas’s own expert’s affidavit finds nothing structurally wrong with the replacement ramp, there is no basis for recovery under either theory. Furthermore, to the extent that Cutler attributes his accident to the “damp, slimy, mildewy” condition of the replacement ramp (Cutler tr at 54), Thomas’s attempt to shift responsibility for his accident and injuries to the third-party defendants is precluded, because she acknowledged that maintenance of the replacement ramp was her responsibility (Thomas tr at 62, 63). For the following reasons, third-party defendants are also entitled to a dismissal of the negligence allegations against them. Cutler, in his verified bill of particulars dated July 8, 2014, sets forth the grounds for his claim of negligence against Thomas (see third-party defendants’ notice of motion, exhibit B). Thomas, in her third-party verified bill of particulars dated September 27, 2016, sets forth the grounds for her claim of negligence against third-party defendant Staley (id. exhibit E). Of significance is the fact that in Thomas’s bill of particulars, the grounds set forth for her claim of negligence against third-party defendant Staley are the same, in all pertinent aspects, as those alleged by Cutler against Thomas. As part of the discovery process, plaintiffs provided to defendant/third-party plaintiff Thomas and to third-party defendant Staley an expert witness disclosure, pursuant to CPLR 3101 (d), dated November 30, 2016 (id. exhibit C). The expert identified in the exchange is Frederick W. Glaser, P.E. The exchange sets forth Glaser’s opinion as to why certain “acts and omissions [by the defendant/third-party plaintiff] were proximate causes of the accident” (id.). Also as part of the discovery process, Thomas provided to plaintiffs and third-party defendants an expert witness disclosure, pursuant to CPLR 3101 (d), dated January 19, 2017 (id. exhibit F). This exchange includes a report by Thomas’s expert engineering consultant, Scott E. Derector, P.E. In his report, Derector challenges and refutes each of the allegations as to the acts and omissions which Glaser asserts were proximate causes of the accident. In substance, Derector contends that there was nothing wrong with the construction of the subject ramp, that it was structurally sound, and that it was in compliance with applicable statutes, codes and regulations. It is noted that Thomas’s opposition papers do not include an expert’s affidavit alleging any wrongdoing on the part of Staley. In fact, the only expert report submitted by Thomas in connection with this case was the one prepared by Derector, described above, which Thomas submitted as part of her defense against plaintiff’s action against her. Staley supports his motion for summary judgment with the affidavit of his expert, James J. Bernitt, P.E. In it, Bernitt sets forth opinions that are, in all material ways, consistent with those contained in the report of Derector. This is not a situation where Thomas acknowledges that there was something wrong with the construction of the ramp, that it was not structurally sound or that applicable statutes, codes and regulations were violated. To be sure, she affirmatively denies this. Yet, she argues that it was Staley’s acts of negligence in constructing and/or repairing the ramp, and not her own, which were to blame for the defective condition of the ramp and plaintiffs’ alleged injuries. In essence, Thomas claims in the action brought against her by Cutler that the ramp was structurally sound, but then turns around and sues Staley, claiming that the ramp was not structurally sound. It is evident from a review of all the pleadings that the material allegations set forth in Thomas’s bill of particulars in the third-party action substantially mirror the allegations set forth in Cutler’s bill of particulars against Thomas. Further, Thomas’s own expert challenges and/or refutes each of the allegations as to acts and omissions which plaintiffs’ expert asserts were proximate causes of the accident. It is, therefore, disingenuous on the part of Thomas to defend against a motion for summary judgment by Staley when the grounds for Staley’s motion are the very facts and opinions contained in the report prepared by Thomas’s own expert. The doctrine of judicial estoppel, or the doctrine of inconsistent positions, can preclude a party from inequitably assuming inconsistent positions within the same proceeding (see Matter of Hartsdale Fire Dist. v Eastland Constr., Inc., 65 AD3d 1345, 1346, 1348 [2d Dept 2009]). As applied here, the doctrine applies against Thomas who, in her opposition to plaintiffs’ allegations, and in her opposition to Staley’s motion, asserts inconsistent positions with respect to the same facts about the subject ramp. Accordingly, it is ordered that the motion for summary judgment is granted and the third-party complaint is severed and dismissed with costs and disbursements to said third-party defendants as taxed by the Clerk upon the submission of an affirmed bill of costs; and it is further ordered that the Clerk is directed to enter judgment accordingly; and it is further ordered that the first-party action shall continue. At her deposition, Thomas testified that her husband, Michael Thomas, died on August 25, 1999 (Thomas tr at 8). For the balance of the decision, the court will refer only to defendant Thomas.